**Sendhabhai PATEL, Plaintiff-Appellant,**

v.

**Dr. Alex WARGO, Etc.,**
**Defendant-Appellee.**

No. 85–5998.

United States Court of Appeals,
Eleventh Circuit.

Nov. 3, 1986.

---

Donald T. Ryce, Jr., Hogg, Allen, Ryce, Norton & Blue, Coral Gables, Fla., for plaintiff-appellant.

John L. Britton, Britton, Cassel Schantz & Schatzman, Miami, Fla., for defendant-appellee.

Before VANCE and ANDERSON, Circuit Judges, and PITTMAN *, Senior District Judge.

ANDERSON, Circuit Judge:

Plaintiff Sendhabhai Patel ("Patel") appeals the judgment of the district court that defendants Dr. Alex Wargo ("Wargo") and Wargo-Babowicz Investment, Inc. ("Investment, Inc.") were not his employers within the meaning of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201–219 ("FLSA").

## I. BACKGROUND

Patel was employed by Pine Wood Lodge, Inc. ("Pine Wood") from December 1, 1982, to August 24, 1984, as controller of the corporation. Pine Wood operated a drug and alcohol rehabilitation center. The land on which the center was located was leased by Pine Wood from Investment, Inc.. The principal shareholders in both

---

* Honorable Virgil Pittman, Senior U.S. District Judge for the Southern District of Alabama, sitting by designation.

Pine Wood and Investment, Inc. were Wargo and Frank Babowicz ("Babowicz"). Although Wargo was a principal shareholder, he did not own a controlling interest. Wargo was the president and vice president of both Pine Wood and Investment, Inc., and Babowicz was the secretary-treasurer of both companies. The corporations had been set up by Wargo and Babowicz in July 1982 for the purpose of establishing the drug and alcohol facility. Wargo was the medical director of Pine Wood and Babowicz, the executive director.

Babowicz died on May 31, 1984, and in June Wargo was appointed acting executive director, a position he held for only a short time until he could arrange to hire a new executive director. At Wargo's direction Patel was fired in August 1984. Pine Wood filed for bankruptcy in November 1984.

The district court found that Pine Wood was covered by the FLSA as a health care institution under 29 U.S.C. § 203(s)(5), that Patel was not an exempt employee, and that Pine Wood was liable for minimum wage and overtime violations with respect to Patel. However, the district court found that neither Wargo nor Investment, Inc. were employers of Patel within the meaning of 29 U.S.C. § 203(d) and entered judgment for both defendants.

## II. DISCUSSION

■ Whether Wargo and Investment, Inc. were employers within the meaning of the Act is a legal determination,[1] not subject to the clearly erroneous standard of review. However, the individual findings of fact which led to that legal determination must be examined under the clearly erroneous standard. *Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 471 n. 4; *see also Beliz v. W.H. McLeod & Sons Packing Co.*, 765 F.2d 1317, 1327 (5th Cir. 1985).

### A. *Investment, Inc.*

Patel argues that Investment, Inc. is jointly liable for the FLSA violations committed by Pine Wood. Patel offers two alternative bases for a finding of liability: (1) that Investment, Inc. was an employer—a joint employer with Pine Wood—of Patel under § 203(d) of the FLSA; or (2) that Pine Wood and Investment, Inc. constituted an "enterprise" and that, since Investment, Inc. was part of an enterprise with Pine Wood, it should be held jointly liable for Pine Wood's violations of the FLSA.

### 1. Investment Inc.'s Liability as an Employer

■ Patel contends that he was one of three people authorized to sign checks drawn on the Investment, Inc. account, in fact signed a number of Investment, Inc. checks, made deposits on behalf of Investment, Inc., and did whatever bookkeeping

1. Although the later cases treated this question as a legal issue, the earlier former Fifth Circuit appears to have wavered in its selection of the proper standard of review. *Compare Donovan v. Tehco, Inc.*, 642 F.2d 141, 143 n. 4 (5th Cir.1981), *Weisel v. Singapore Joint Venture, Inc.*, 602 F.2d 1185, 1189 n. 11 (5th Cir.1979), and *Shultz v. Hinojosa*, 432 F.2d 259, 264 (5th Cir. 1970) (treating the ultimate question as a legal issue), *with Hodgson v. Griffin & Brand of McAllen, Inc.*, 471 F.2d 235, 238 (5th Cir.), *cert. denied*, 414 U.S. 819, 94 S.Ct. 43, 38 L.Ed.2d 51 (1973), and *Wirtz v. Lone Star Steel Co.*, 405 F.2d 668, 669 (5th Cir. 1968) (treating it as a factual issue). The weight of authority in other circuits supports our characterization of the question as one of law, with the subsidiary findings being issues of fact. *See, e.g., Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1468–69 (9th Cir.1983); *Donovan v. Trans World Airlines, Inc.*, 726 F.2d 415, 417 (8th Cir.1984); *Karr v. Strong Detective Agency, Inc.*, 787 F.2d 1205, 1206–07 (7th Cir.1986); *Donovan v. Brandel*, 736 F.2d 1114, 1116 (6th Cir.1984); *Beliz v. W.H. McLeod & Sons Packing Co.*, 765 F.2d 1317, 1327 (5th Cir.1985); *Castillo v. Givens*, 704 F.2d 181, 185–88 (5th Cir.), *cert. denied*, 464 U.S. 850, 104 S.Ct. 160, 78 L.Ed.2d 147 (1983); *Robicheaux v. Radcliff Material, Inc.*, 697 F.2d 662, 666 (5th Cir.1983); *Donovan v. American Airlines, Inc.*, 686 F.2d 267, 270 n. 4 (5th Cir.1982). *But see Donovan v. Sabine Irrigation Co.*, 695 F.2d 190, 194 (5th Cir.), *cert. denied*, 463 U.S. 1207, 103 S.Ct. 3537, 77 L.Ed.2d 1387 (1983).

was necessary for Investment, Inc. The district court found that Patel did a "minimal amount of work" for Investment, Inc. Record, vol. 2 at 158. "[T]he few acts he did for [Investment, Inc.], he did ... as a volunteer, as an accommodation to his own employer, and not truly as an employee." *Id.*

The foregoing findings of historical fact by the district court are not clearly erroneous. The evidence establishes that Patel's contract was made with Pine Wood, that he worked primarily for Pine Wood, and that only occasionally did he perform tasks for Investment, Inc. In light of its findings, the district court correctly concluded that Patel was not an employee of Investment, Inc. The evidence does not demonstrate that Patel contemplated compensation for his acts, *cf., Walling v. Portland Terminal Co.*, 330 U.S. 148, 152, 67 S.Ct. 639, 641, 91 L.Ed. 809 (1947), nor does it demonstrate as a matter of economic reality that Patel was dependent upon Investment, Inc., *cf. Bartels v. Birmingham*, 332 U.S. 126, 130, 67 S.Ct. 1547, 1550, 91 L.Ed. 1947 (1947); *Usery v. Pilgrim Equipment Co.*, 527 F.2d 1308, 1311 (5th Cir.), *cert. denied*, 429 U.S. 826, 97 S.Ct. 82, 50 L.Ed.2d 89 (1976). Therefore, the judgment of this district court with respect to Investment, Inc.'s status as an employer under the FLSA is affirmed.

### 2. Investment Inc.'s Liability on the Enterprise Theory

Patel suggests that Pine Wood and Investment, Inc. constitute an "enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206(a). The FLSA defines enterprise as "related activities performed (either through unified operation or common control) by any person or persons for a common business purpose." 29 U.S.C. § 203(r). A showing that two entities constitute an enterprise can be the first step in establishing coverage under the FLSA, since coverage is determined in part by an annual dollar volume test. 29 U.S.C. § 206(a); *Donovan v. Easton Land & Development, Inc.*, 723 F.2d 1549, 1551 (11th Cir.1984); *Brennan v. Veteran's Cleaning Service, Inc.*, 482 F.2d 1362 (5th Cir.1973); *Shultz v. Mack Farland & Sons Roofing Co.*, 413 F.2d 1296 (5th Cir.1969).

In the instant case we are not concerned with the issue of coverage; the district court determined that Pine Wood was covered under § 203(s)(5) and this issue has not been raised on appeal. Rather Patel contends that the corporations which constitute an enterprise should be jointly and severally liable for underpayments to all employees of the constituent corporations.

There is no case holding that the individual entities which make up an enterprise should be jointly and severally liable for another entity's employees solely because they are members of the enterprise. In other words, there is no case which holds that the analysis of liability under the FLSA is the same as the analysis of the existence of an enterprise under the FLSA. We hold that the two analyses are and should be different.

There are several reasons why the analyses are different. First, the statute premises liability on an employer-employee relationship:

> Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates:
> · · ·

29 U.S.C. § 206(a). Thus, the obligation is on each employer [2] to pay "each of *his* employees." " '[T]he purpose of the Fair Labor Standards Act [was not] to create new wage liabilities, but where a wage liability exists, to measure it by the standards fixed by law.' " *Walling v. Jacksonville Terminal Co.*, 148 F.2d 768, 769 (5th

---

2. The terms "employ," "employer," and "employee" are not specifically defined in the FLSA. *See* 29 U.S.C. § 203(g), (d) and (e).

Cir.1945).[3] There is no suggestion in the language of the statute that an employer is responsible to other employers' employees, unless of course there is a joint employer relationship. *See* 29 C.F.R. § 791.2.

The statute defines enterprise as follows: 'Enterprise' means the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units including departments of an establishment operated through leasing arrangements, but shall not include the related activities performed by such enterprise by an independent contractor....

29 U.S.C. § 203(r). Thus, under the plain words of the statute the criteria for establishing an enterprise are much broader than the criteria necessary to establish liability.

Second, the legislative history of the FLSA and the case law demonstrate that the enterprise analysis was included in the FLSA solely for the purpose of expanding the scope of coverage of the statute. The legislative history clearly states the congressional purpose to expand the coverage of the Act, i.e., to lump related activities together so that the annual dollar volume test for coverage would be satisfied. S.Rep. No. 145, 87th Cong., 1st Sess., *reprinted in* 1961 U.S.Code Cong. & Ad. News 1620, 1660–61. The legislative history contains no hint that Congress intended to make employers liable for the employees of a separate entity in the enterprise. The enterprise provisions of the FLSA became law as part of the Fair Labor Standards Amendments of 1961. "Prior to 1961, coverage under the Act was determined exclusively on an employee-by-employee basis. The Act's coverage extended 'only to those individual employees who [could] be proved to be personally engaged in interstate commerce or in the production of goods for interstate commerce.' " *Montalvo v. Tower Life Building*, 426 F.2d 1135, 1139 (5th Cir.1970) (citing legislative history). Enterprise coverage was "a new type of coverage," *id.*, pursuant to which all the employees of an employment unit which "falls within the ambit of the Act," *id.*, are covered by the FLSA.

In contrast, liability hinges on "whether or not there is an employment relationship, for that is the frame of reference in which Congress placed its mandates." *Mitchell v. Whitaker House Cooperative, Inc.*, 275 F.2d 362, 364 (1st Cir.1960). "[T]he test of the applicability of the Act has been held to be whether or not as a matter of economic fact there is an employer-employee relationship involved." *Id.* (citations omitted).

Moreover, in analyzing liability under the Act, "it should not lightly be inferred that Congress intended to disregard ... the shield from personal liability which is one of the major purposes of doing business in a corporate form." *Donovan v. Agnew*, 712 F.2d 1509, 1513 (1st Cir.1983). In contrast, Congress has expressly disregarded the corporate shield with respect to the analysis of coverage under the FLSA.

The wisdom of our conclusion is apparent when it is realized that a small snack bar is part of an enterprise which also includes a large bus terminal as a separate entity, *Dunlap v. Glaspie*, 77 Lab.Cas. (CCH) ¶ 33,317 (W.D.Ky. Oct. 2, 1975), and that a small leased department is part of an enterprise which also includes as a separate entity a large department store. Opinion Letter No. 8, Wages-Hours Administrative Rulings (CCH) ¶ 30,512 (Aug. 30, 1961); Opinion Letter No. 242, Wages-Hours Administrative Rulings (CCH) ¶ 30,836 (Apr. 17, 1964). If Patel's theory were correct, the small snack bar or the small leased department would be liable to the many employees of the large bus terminal or the large department store enterprise notwithstanding the fact that the small snack bar

---

**3.** In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

or leased department was under entirely separate ownership from the larger entities in the enterprise.

Patel argues that "the evidence supporting the finding of a single enterprise may serve also as a basis for assessing joint liability for violations of the Act," Appellant's Brief at 15, citing *Donovan v. Janitorial Services, Inc.*, 672 F.2d 528, 531 (5th Cir.1982) and *Shultz v. Mack Farland & Sons Roofing Co.*, 413 F.2d 1296, 1300–01 (5th Cir.1969).[4] Neither of these cases supports this proposition.

In *Janitorial Services, Inc.*, the new Fifth Circuit stated:

> The considerations supporting a determination that the three corporations compose a single enterprise also support a conclusion that Meis [the principal shareholder in each corporation] is an employer of the Johnson Disposal employees, within the meaning of FLSA § 3(d), 29 U.S.C. § 203(d).

*Janitorial Services, Inc.*, 672 F.2d at 531. The court held that a principal shareholder may be an employer within the meaning of the FLSA and thus liable for violations of the FLSA. The court dealt separately with the issue of whether the two corporations met the statutory test for coverage purposes, i.e., the "enterprise" test. The above quoted passage supports only the proposition that some of the same evidence may be relevant to both determinations. The court held, however, only that a principal shareholder may be an employer within the meaning of the FLSA and thus liable for violations of the FLSA. *Janitorial Services, Inc.* does not stand for the proposition that each of the corporations making up an enterprise is liable for underpayments made by all the other corporations. Moreover, Patel's reliance on *Mack Farland* is misplaced. In the *Mack Farland* case, the former Fifth Circuit found only that the corporations controlled by McFarland, the principal shareholder, were part of an enterprise. There was no suggestion that the corporations were responsible for violations by the other corporations.

The case law treats the questions of enterprise and liability separately. For example, in *Donovan v. Grim Hotel Co.*, 747 F.2d 966 (5th Cir.1984), the court stated that "the obligation of the corporations to conform to the Act's wage and hour requirements [i.e., coverage] depends on whether the hotel corporations, viewed together, constitute an 'enterprise.'" *Id.* at 969. After concluding that the five corporations were an enterprise and therefore were subject to the obligations of the FLSA, the court separately examined the question of whether the principal shareholder of the corporations was individually liable for the violations of the FLSA. *Id.* at 971.

In conclusion, we hold that the enterprise analysis is different from the analysis of who is liable under the FLSA. The finding of an enterprise is relevant only to the issue of coverage. Liability is based on the existence of an employer-employee relationship. In the instant case, the district court found that Investment, Inc. was not an employer of Patel within the meaning of the FLSA. There is no suggestion that Investment, Inc. was responsible for the day-to-day operations of Pine Wood or had anything to do with the employees of Pine Wood. Therefore, we affirm the judgment of the district court on this issue.

### B. *Wargo*

Patel contends that Wargo, by virtue of his status as President, director and a principal stockholder of Pine Wood, is an employer within the meaning of the FLSA. An employer includes "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer

---

**4.** *See, supra,* footnote 3. *Mack Farland* is binding precedent in this circuit; *Janitorial Servic-* *es* is not.

along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir.1983) (citing cases). *Accord Donovan v. Grim Hotel Co.*, 747 F.2d 966, 972 (5th Cir.1984), *cert. denied*, — U.S. ——, 105 S.Ct. 2654, 86 L.Ed.2d 272 (1985).

In the instant case, the district court found that "the operator and the manager of [Pine Wood] was Frank Babowicz, who arranged the contract, who worked out the details with the plaintiff in this case." Record, vol. 2 at 158. The district court also found that "Dr. Wargo indicated, when he was aware of the suggestion of the contract [sic], that he found that a ridiculous utterance." *Id.* The district court concluded that although Wargo was the president of both corporations, he did not take such an active role as to be held personally responsible. *Id.* at 158–59.

The district court was not clearly erroneous in its fact-finding in this regard. For example, Patel himself acknowledged that Babowicz was in charge of the day-to-day operation of the facility. Record, vol. 2 at 62–63. Nor was the district court clearly erroneous in finding that Wargo had not become personally involved in the day-to-day operations of the facility.

In *Donovan v. Agnew*, the First Circuit found that "corporate officers with a significant ownership interest who had operational control of significant aspects of the corporation's day to day functions, including compensation of employees, and who personally made decisions to continue operations despite financial adversity during the period of nonpayment" were employers within the meaning of the FLSA. *Donovan v. Agnew*, 712 F.2d at 1514. In contrast to the *Agnew* case, the facts in this case indicate that Wargo did not have operational control of significant aspects of Pine Wood's day-to-day functions, including compensation of employees or other matters "in relation to an employee."

Most cases finding corporate officers liable for FLSA violations have involved company-wide underpayment of large numbers of workers, *see, e.g., Donovan v. Grim Hotel*, 747 F.2d at 972 (177 employees); *Donovan v. Agnew*, 712 F.2d at 1510 (99 employees); *Donovan v. Janitorial Services, Inc.*, 672 F.2d at 1529–31 (the employees of three corporations). To be personally liable, an officer must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee. In this case, the district court found that Wargo was neither responsible for Patel's contract nor involved in the day-to-day operation of the facility. Although as president of Pine Wood, Wargo might have played a greater role, the district court found that he had not. In light of these findings, we hold that the district court correctly concluded that Wargo lacked the operational control necessary for the imposition of liability as an "employer" under the FLSA.

### III. CONCLUSION

For the reasons stated above, the judgment of the district court is

AFFIRMED.