[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-15832

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 27, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 05-22599-CV-AJ

MERCEDES OLIVAS, and all other employees
similarly situated,

Plaintiff–Counter-Defendant–
Appellee–Cross-Appellant,

versus

A LITTLE HAVANA CHECK CASH, INC.,

Defendant–Counter-Claimant–
Appellant–Cross-Appellee,

FRANCISCO P. RODRIGUEZ,

Defendant–Appellant–
Cross-Appellee,

SARA E. RODRIGUEZ,

Defendant.

_____

No. 07-15881
_____

D. C. Docket No. 06-21942-CV-AJ

MERCEDES OLIVAS,

Plaintiff–Counter-
Defendant–Appellee,

versus

A LITTLE HAVANA CHECK CASH, INC.,
FRANCISCO RODRIGUEZ

Defendants–Counter-
Claimants–Appellants,

SARA RODRIGUEZ,

Defendant–Counter-Claimant.


_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(April 27, 2009)

Before DUBINA and CARNES, Circuit Judges, and RESTANI,[*] Judge.

_____

[*] Honorable Jane A. Restani, Chief Judge of the United States Court of International
Trade, sitting by designation.

PER CURIAM:

This matter arises from consolidated actions that Appellee–Cross-Appellant Mercedes Olivas commenced under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., to recover unpaid overtime wages and damages for unlawful retaliation. After remittiturs, the United States District Court for the Southern District of Florida entered amended final judgments awarding Olivas $23,688 in unpaid wages[1] and $25,000 in emotional distress damages. Appellants–Cross-Appellees A Little Havana Check Cash, Inc. and Francisco Rodriguez (where appropriate, collectively, "Little Havana") appeal both judgments. Olivas cross-appeals, arguing that the district court erred in granting judgment as a matter of law in favor of Mr. Rodriguez's wife. We affirm the matters appealed by Little Havana, reverse the grant of judgment as a matter of law in favor of Mrs. Rodriguez, and remand for a jury trial to determine whether Mrs. Rodriguez is liable as an "employer" under the FLSA.

## BACKGROUND

Olivas worked for A Little Havana Check Cash, Inc. during the relevant period, September 29, 2002, through April 11, 2005. Mr. Rodriguez and Mrs.

---

[1] The amount awarded in the judgment is actually double the amount of unpaid wages, as Olivas was entitled to liquidated damages based on the jury's finding of willful violation of the FLSA. See 29 U.S.C. §§ 216(b), 260.

3

Rodriguez were the owners, shareholders, and corporate officers of the business. During the relevant period, Olivas earned $7.00 per hour. Under the FLSA, she was entitled to earn $10.50 per hour for any overtime hours worked. See 29 U.S.C. § 207(a)(1). Little Havana conceded that it owed Olivas overtime wages but disputed the amount owed.

On April 11, 2005, Olivas took $35,000 from the store, claiming that the money constituted wages that Mr. Rodriguez owed her. Mr. Rodriguez retrieved the money later that day and filed a police report. In September 2005, Olivas commenced an action against A Little Havana Check Cash, Inc., and Mr. and Mrs. Rodriguez in their individual capacities, to recover unpaid wages (Case No. 05-22599-CV-AJ). Specifically, she claimed that she worked an average of eighty-five hours per week during her employment but did not receive any overtime wages. Little Havana filed a counterclaim alleging conversion of funds and sought to have that claim offset against any wages that it owed.

In January 2006, the State of Florida charged Olivas with grand theft of the $35,000 and arrested her. Between March and June 2006, Mr. Rodriguez and his attorney, who is also counsel here, told Olivas' criminal defense counsel that they would recommend to the state's attorney office that the criminal case be dismissed if Olivas dismissed her overtime claim. Olivas, however, pled no contest to the

4

charge and proceeded with her claim. In August 2006, Olivas commenced the retaliation action against Little Havana (Case No. 06-21942-CV-AJ). The district court consolidated both FLSA actions for trial.

Before and during trial, the district court ruled on various motions. The court denied Little Havana's motion to strike Olivas' overtime complaint for allegedly misrepresenting the number of days and hours worked and that she was not paid any overtime wages. The court granted Olivas' motion in limine to exclude from evidence hospital records stating that Olivas used marijuana. The district court also granted summary judgment against Olivas on the issue of liability in the conversion counterclaim, judgment as a matter of law against Little Havana on the issue of liability in the overtime claim, and judgment as a matter of law in favor of Mrs. Rodriguez in the overtime and retaliation claims. Ultimately submitted to the jury were the issues of damages on the overtime claim, punitive damages on the conversion counterclaim, and liability and damages on the retaliation claim. The jury awarded Olivas $29,799 in unpaid overtime wages and $150,000 in emotional distress damages on the FLSA claims, but did not award Little Havana any punitive damages on the counterclaim.

Little Havana then moved for a new trial, arguing that the damages awards were excessive and tainted by passion or prejudice. The district court declined to

grant a new trial, but remitted the awards and entered amended final judgments. Little Havana appeals both judgments, and Olivas cross-appeals the judgment in the overtime action.[2]  This Court consolidated the appeals.  We have jurisdiction under 28 U.S.C. § 1291.

## DISCUSSION

Little Havana challenges the district court's exclusion of hospital records, denial of its motion to strike, and denial of its motion for a new trial.  Olivas challenges the district court's grant of judgment as a matter of law in favor of Mrs. Rodriguez.

Initially, because Little Havana failed to object to the district court's ruling on the admissibility of the hospital records, it forfeited its right to challenge it on appeal here.  See Webb-Edwards v. Orange County Sheriff's Office, 525 F.3d 1013, 1030 (11th Cir. 2008) (stating that a party "who deems himself aggrieved by . . . an erroneous ruling by the trial judge ordinarily must object then and there, or forfeit any right to complain at a later time." (citation omitted)).  Thus, we decline to address its argument as to the district court's evidentiary ruling.  We now address the remaining contentions.

---

[2] Olivas' cross-appeal from the judgment entered on the retaliation claim was dismissed as untimely.  Olivas has been deported.  This does not affect our disposition of these appeals.

6

## I.      Motion to Strike

In a pre-trial motion, Little Havana urged the district court to exercise its inherent power to strike Olivas' pleadings as a sanction for perjury and fabrication of evidence. Little Havana contended that Olivas misrepresented in her complaint, answers to interrogatories, and deposition that she worked an average of eighty-three to eighty-five hours per week, worked everyday for 132 consecutive weeks, and did not receive any overtime wages. Little Havana claimed that Olivas' own calendars and handwritten notes belied these assertions. In denying the motion, the district court stated:

> [Olivas] explained that the calendars [were] not accurate, because her hours always changed; that her check stubs were not accurate, because the correct hours weren't put in there, or she was only paid by check for some of the hours she worked. . . . If you had asked her flat-out in her deposition, 'Are these records 100 percent correct,' and she told you that they were, it might be a different scenario, but she didn't. She explained at her depositions, and here in court, the reasons why she says that these were not a hundred percent accurate.

(Trial Tr. 529:4–19, May 4, 2007.)

Little Havana argues that the district court erred in declining to exercise its inherent power to strike Olivas' pleadings. We review a district court's decision whether to exercise its inherent power to sanction a litigant for abuse of discretion. Barnes v. Dalton, 158 F.3d 1212, 1214 (11th Cir. 1998).

7

The "'key to unlocking the court's inherent power'" to impose sanctions is a finding of bad faith. Byrne v. Nezhat, 261 F.3d 1075, 1123 (11th Cir. 2001) (quoting Barnes v. Dalton, 158 F.3d 1212, 1214 (11th Cir. 1998)). Bad faith exists where a party "'knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent.'" Id. at 1121 (quoting Barnes, 158 F.3d at 1214). False statements in affidavits, depositions, and sworn statements alone do not warrant a finding of bad faith, but such statements can be evidence of bad faith if "there is other evidence in the record indicating that the statement[s] [were] made for a harassing or frivolous purpose." Id. at 1125.

Here, although Olivas' handwritten notes belie her statements as to the overtime hours worked and overtime wages received, the record does not compel the conclusion that she made the statements for a frivolous or harassing purpose. Indeed, Little Havana admitted that it owed Olivas overtime wages, and the evidence shows that Olivas worked many hours without overtime pay during most of her employment. The record also shows that Olivas consistently asked for overtime wages, but, aside from the short time period she admitted to have received such wages, Mr. Rodriguez did not respond to her requests. The district court could conclude that Olivas initiated the action to recover the wages to which

she was entitled, not to harass Little Havana, and therefore it did not abuse its discretion in denying the motion to strike.

## II.    Motion for a New Trial

In its motion for a new trial, Little Havana argued that the damages awards were excessive. The district court denied the motion, but remitted the awards. The court concluded that the $29,799 awarded for unpaid overtime wages, which was based on an average of 64.5 weekly overtime hours, exceeded the amount established by the evidence. The court recalculated unpaid overtime wages as $20,097 based on 43.5 weekly overtime hours, and awarded an additional $3,591 in straight time and overtime wages based on Olivas' testimony that she did not receive any wages for hours worked before and after store hours for nineteen months. The district court concluded that the award of $150,000 for emotional distress damages shocked the conscience in light of its instructions limiting the award of those damages. The court remitted the award to $25,000 and gave Olivas the option of a new trial, which she did not elect.

Little Havana challenges the district court's refusal to grant a new trial. Although it argued before the district court that the excessiveness of the damages required a new trial, it now argues that a new trial was mandatory because the jury "misse[d] the mark on damages and liability." (Appellants' Br. 16.) Because

9

Little Havana did not raise the liability challenge before the district court, it failed to preserve the challenge for appeal. See Etienne v. Inter-County Sec. Corp., 173 F.3d 1372, 1375 (11th Cir. 1999). Thus, we decline to address it. To the extent that Little Havana argues that excessiveness of the jury overtime award[3] required that the district court grant a new trial, we conclude that the district court did not abuse its discretion in refusing to do so. See Goldstein v. Manhattan Indus., Inc., 758 F.2d 1435, 1447–48 (11th Cir. 1985).

Little Havana also appears to argue that a new trial is required because the district court's remittitur to $20,097 still exceeds the amount supported by the evidence, particularly in light of Olivas' admissions that she received some overtime wages and had taken time off from work.[4] We review a district court's remittitur award for abuse of discretion. See Fratelli Gardino S.p.A. v. Caribbean Lumber Co., 587 F.2d 204, 206 (5th Cir. 1979).[5] Where a district court has already "invoked its discretion in granting a remittitur, our scope of review is even

---

[3] Little Havana expressly argues only that the jury erred in its award in the overtime claim.

[4] Little Havana does not challenge the court's award of the final $3,591.

[5] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

10

narrower than usual." Stapleton v. Kawasaki Heavy Indus., Ltd., 608 F.2d 571, 574 n.7 (5th Cir. 1979).

Generally, where a jury award exceeds the amount established by the evidence, "a remittitur order reducing [the] jury's award to the outer limit of the proof is the appropriate remedy." Goldstein, 758 F.2d at 1448. Further, where an employer has not kept adequate records of its employees' wages and hours, "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the requirements of [the FLSA]." Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 688–89 (1946), superceded by statute on other grounds as stated in Bonilla v. Baker Concrete Constr., Inc., 487 F.3d 1340, 1344 n.6 (11th Cir. 2007); see also Brock v. Norman's Country Market, Inc., 835 F.2d 823, 828 (11th Cir. 1988) (citations omitted). Where the employer fails to submit accurate records, to recover, the employee "need only show 'he has in fact performed work for which he was improperly compensated and . . . produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" Brock, 835 F.2d at 828 (quoting Mt. Clemens, 328 U.S. at 687). Upon such showing, the burden "shifts to the employer to prove its claim or disprove the employee's, and upon failing to do so, the court can award damages

11

to the employee even if the result is only approximate." Etienne, 173 F.3d at 1375 (citing Mt. Clemens, 328 U.S. at 687–88).

Here, instead of producing its own evidence to support its claims as to the number of hours Olivas worked, Little Havana relies solely on Olivas' records, which Olivas admitted were inaccurate. Nonetheless, Olivas' evidence shows that she had worked many overtime hours and did not receive overtime wages for most of those hours. Further, Olivas explained how and why her records were inaccurate, and claimed that the 83.5 figure was merely an average of weekly hours worked. We conclude that Olivas established the amount and extent of her work "as a matter of just and reasonable inference." Brock, 835 F.3d at 828 (internal quotation marks and citation omitted). Little Havana did not present any evidence as to the amount of work Olivas performed or to rebut her explanations. Because Little Havana failed to fulfill its duty to maintain accurate employment records as required by the FLSA, see 29 U.S.C. § 211(c), and never provided an alternative calculation to aid the district court in deciding the proper amount to award, we reject Little Havana's complaint that the district court's award lacks sufficient precision.

## III. Mrs. Rodriguez as an "Employer" under the FLSA

Before submitting the case to the jury, the district court concluded that Mrs. Rodriguez was not an "employer" under the FLSA and granted judgment as a matter of law in her favor. Olivas argues that the district court should have submitted the issue of whether Mrs. Rodriguez was an "employer" to the jury. We uphold the granting of a motion for judgment as a matter of law "[i]f the facts and inferences point overwhelmingly in favor of one party, such that reasonable people could not arrive at a contrary verdict." Alvarez Perez v. Sanford-Orlando Kennel Club, Inc., 515 F.3d 1150, 1160 (11th Cir. 2008) (internal quotation marks and citation omitted).

Under the FLSA, employers must pay employees minimum and overtime wages. 29 U.S.C. §§ 206, 207. The Act broadly defines "employer" to "include[] any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). In Patel v. Wargo, 803 F.2d 632, 637–38 (11th Cir. 1986), we concluded that status as a corporate officer alone is insufficient to render an individual an "employer" to hold the officer personally liable for unpaid wages. Rather, we held in Patel that to be personally liable as an "employer," a corporate officer "must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee."

13

<u>Id.</u> at 638. In determining whether a corporate officer is an "employer," we have inquired as to whether the officer was involved in the compensation of employees, the hiring or firing of employees, or other matters "in relation to an employee." <u>Alvarez Perez</u>, 515 F.3d at 1161; <u>Patel</u>, 803 F.2d at 638; <u>see also</u> 29 U.S.C. 203(d).

Here, Mrs. Rodriguez's status as a co-owner, corporate officer, and shareholder of the business is undisputed. Mr. and Mrs. Rodriguez, however, testified that Mr. Rodriguez was the one who managed the business and that Mrs. Rodriguez only cleaned the office, purchased office supplies, and collected bad checks. (Trial Tr. 5:3–5, May 1, 2007; <u>id.</u> at 151:13–16, 152:9–11, May 2, 2007.) Olivas stated that Mr. Rodriguez was usually the one in the office counting the money and verifying the balance. (Olivas Dep. 27:18–23, 29:4–6, Nov. 22, 2006.) Nonetheless, Mr. Rodriguez also testified that Mrs. Rodriguez was a signatory to the company's operating bank account during the relevant period. (Trial Tr. 156:5–9, May 2, 2007.) Further, Olivas stated that when Mr. Rodriguez was not present, Mrs. Rodriguez gave instructions, answered questions, and resolved problems that arose during work. (Trial Tr. 340:3–19, May 3, 2007; <u>id.</u> at 498:11–14, May 4, 2007.) A former employee testified that Mr. Rodriguez instructed the employees to call Mrs. Rodriguez with questions whenever he was

14

out of the country.  (Trial Tr. 64:6–9, May 2, 2007.)  Additionally, Olivas stated that when Mr. Rodriguez was out of the country, Mrs. Rodriguez "would come in and sit there everyday and watch," and would ask for the balance of the previous day to account for all of the money.  (Olivas Dep. 26:14–27:4.)  Olivas also testified that when Mr. Rodriguez offered her the job, he directed her to speak with Mrs. Rodriguez because Mrs. Rodriguez was "the other owner of the store and she like[d] to know the names and all of the information of the people that are working here."  (Id. at 21:13–19.)

The district court determined that Mrs. Rodriguez's involvement in the business was insufficient to meet the requirements set forth in Patel.  The court concluded that "simply answering questions from Ms. Olivas when Mr. Rodriguez wasn't there is not enough to constitut[e] operational control in light of all of the other facts and circumstances in this case."  (Trial Tr. 614:24–615:2, May 7, 2007.)  The court also concluded that Mrs. Rodriguez "did nothing to set hours; . . . did nothing to set salaries; . . . did nothing to pay overtime; . . . was not the one who hired . . . Olivas; [and was] not the one who told . . . Olivas what to do generally."  (Id. at 618:24–619:2.)

Contrary to the district court's conclusion, we find that reasonable people could conclude that Mrs. Rodriguez was an "employer" under Patel.  Given the

15

totality of the evidence, a reasonable person could conclude that Mrs. Rodriguez

was in charge of day-to-day operations and exercised direct supervision of the

employees, particularly when Mr. Rodriguez was out of the country, so as to

establish "employer" status.  See Donovan v. Janitorial Servs., Inc., 672 F.2d 528,

531 (5th Cir. 1982) (stating that occasional control does not diminish the

significance of the existence of such control).[6]  Thus, we reverse the district

court's ruling on this point and remand for a jury trial to determine whether Mrs.

Rodriguez was an "employer" within the meaning of the FLSA.

_____

[6] The district court also concluded that Mrs. Rodriguez did not meet the "economic reality test" set forth in Bonnette v. California Health & Welfare Agency, 704 F.2d 1465 (9th Cir. 1983), abrogated on other grounds by Garcia v. San Antonio Metro. Transit Auth., 469 U.S. 528, 539 (1985), which some courts apply to determine if an employer/employee relationship exists. The test involves inquiries into "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Id. at 1470 (internal quotation marks and citation omitted).  It is unclear whether the Bonnette test applies in the context of determining whether a corporate officer is an "employer," as normally it is applied in cases concerning whether an entity is an employer.  See Baystate Alternative Staffing v. Herman, 163 F.3d 668, 674–79 (1st Cir. 1998) (applying Bonnette test in deciding whether corporation was "employer" but not in deciding whether corporate officer was); see also Morgan v. MacDonald, 41 F.3d 1291, 1293 (9th Cir. 1994) ("The Bonnette factors are properly applied when an individual is clearly employed by one of several entities and the only question is which one."); Vanskike v. Peters, 974 F.2d 806, 809 (7th Cir. 1992) ("The Bonnette factors, with their emphasis on control over the terms and structure of the employment relationship, are particularly appropriate where (as in Bonnette itself) it is clear that some entity is an 'employer' and the question is which one.").  But see Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139–40 (2d Cir. 1999) (applying Bonnette test to determine if corporate officer was "employer").  Little Havana misstated the law when it asserted that we have employed the test in determining whether an individual is an "employer" in Villarreal v. Woodham, 113 F.3d 202, 205 (11th Cir. 1997).  We did not do so there, as that case did not concern the issue of whether an individual was an "employer."  We need not decide the issue of applicability of the test, however, because even applying it, a reasonable person could find that Mrs. Rodriguez was an "employer."

16

## CONCLUSION

We affirm the district court's exclusion of the hospital records, denial of the motion to strike, and denial of the motion for a new trial. We reverse the district court's grant of judgment as a matter of law in favor of Mrs. Rodriguez and remand for a jury trial on the issue of whether Mrs. Rodriguez was an "employer" under the FLSA.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED IN PART WITH INSTRUCTIONS FOR FURTHER PROCEEDINGS.**