[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-13376

_____

WILLIAM M. SPEARS, JR.,

Plaintiff-Appellee,

*versus*

BAY INN & SUITES FOLEY, LLC, et al.,

Defendants,

RICK PATEL,
RICK PATEL, JR.,

Defendants-Appellants.

_____

2                    Opinion of the Court                    22-13376

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:19-cv-00269-C

———————————————

Before WILLIAM PRYOR, Chief Judge, and JORDAN and BRASHER, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

This appeal requires us to decide whether the district court erred when it ruled that a wage-earning hotel manager who exercised some financial control is an employer subject to individual liability under the Fair Labor Standards Act and when it considered the stipulated value of an employee's lodging in calculating overtime pay but excluded that stipulated value from the calculation of hourly wages. William Spears worked as a front desk clerk at hotels operated by Rick Patel Sr. and his son, Rick "Sunny" Patel Jr. Spears was compensated with monthly paychecks and onsite lodging. Spears sued the Patels and the hotel entities under the Act for wages owed and unpaid overtime. Following a bench trial, the magistrate judge ruled that Sunny was an employer individually liable for the violations. In calculating Spears's damages, the magistrate judge considered the stipulated value of Spears's lodging for unpaid overtime but declined to include it in the minimum-wage calculation. Because Sunny was involved in the day-to-day operation of the hotels and exercised some financial control, we affirm the ruling that Sunny was an employer under the Act. But we vacate and remand for recalculation of damages.

# I. BACKGROUND

William Spears worked as a front desk clerk for nearly a decade at various hotels in Alabama operated by Rick Patel Sr. and his son, Rick "Sunny" Patel Jr. Throughout his employment, Spears worked night shifts, usually 62 hours a week. His tasks included checking guests into and out of the hotel, answering the phone, making reservations, and sometimes performing housekeeping and maintenance tasks. Spears was paid $700 to $750 a month. Rick ordinarily signed these paychecks, but Sunny would sometimes sign them instead. Spears also received onsite lodging, which the parties stipulated was worth $630 a week.

Because Rick was based in Florida, Sunny handled day-to-day operations at the Alabama hotels. Spears interacted mostly with Sunny, not Rick. Like Spears, Sunny lived onsite and was a wage-earning employee. Spears testified that Sunny was his immediate supervisor and that Sunny assigned Spears tasks and scheduled his shifts. At Sunny's direction, Spears would adjust the room rental rates. Spears understood that Rick and Sunny collaborated on room rental rates and worked together to set hotel prices.

After the relationship between Spears and the Patels soured, Spears sued the Patels and the hotel entities under the Fair Labor Standards Act, *see* 29 U.S.C. §§ 201–219. Spears alleged that he was paid less than the federal minimum wage during his employment and was owed overtime pay for the hours he worked beyond 40 hours a week. *Id.* §§ 206(a), 207(a). The case went to a bench trial before a magistrate judge.

The magistrate judge found that Spears was not paid the legally required minimum wage or overtime. The magistrate judge ruled that Rick and Sunny were employers under the Act individually liable for those violations. The magistrate judge also found that Spears was entitled to damages for unpaid overtime and minimum wages.

To calculate damages, the magistrate judge included the stipulated $630 lodging value to determine Spears's overtime pay rate. The inclusion of the value of lodging in the overtime calculation meant that the $630 amount was considered part of Spears's base pay that was multiplied by one-and-one-half to determine his hourly overtime pay rate. So if Spears worked 62 hours a week for a month, the $630 per week would be added to his actual pay and divided by the total hours worked. That combined hourly rate would be multiplied by one-and-one-half to determine Spears's overtime rate. But the magistrate judge did not give the Patels credit for the value of Spears's lodging when calculating Spears's unpaid minimum wages. The exclusion of the stipulated value of lodging from the calculation of Spears's minimum wages meant that the value of lodging was not considered part of Spears's total compensation and did not reduce the damages that the Patels and the entities had to pay Spears for his unpaid minimum wages.

## II. STANDARDS OF REVIEW

After a bench trial, we review conclusions of law *de novo* and factual findings for clear error. *Tartell v. S. Fla. Sinus & Allergy Ctr., Inc.*, 790 F.3d 1253, 1257 (11th Cir. 2015). A factual finding is clearly erroneous if, after viewing all the evidence, we are left with the definite and firm conviction that a mistake has been committed. *Id.*

## III. DISCUSSION

We divide our discussion into two parts. First, we explain that the magistrate judge correctly ruled that Sunny is an employer under the Act. Second, we explain that the magistrate judge erred in failing to give the Patels credit for the cost of Spears's lodging when calculating Spears's unpaid minimum wages.

### A. Sunny Patel Is an Employer Under the Act.

The Patels argue that the magistrate judge erred in ruling that Sunny was an employer under the Act. The Patels contend that Sunny was not an employer because he did not have any control or decision-making authority over Spears's compensation and did not exercise control over the finances of the hotels. We disagree.

The Act creates a private right of action against any employer who violates its minimum wage or overtime provisions. 29 U.S.C. § 216(b). The Act defines "employer" broadly to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." *Id.* § 203(d). Whether an individual fits this definition turns not on "technical or isolated factors but rather on the circumstances of the whole activity." *Alvarez Perez v. Sanford-*

*Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1160 (11th Cir. 2008) (citation and internal quotation marks omitted)

The Patels argue that Sunny cannot be an employer under the Act because he is a wage-earning employee and not an owner of the limited liability company that owned the hotels where Spears worked. But ownership is not dispositive for individual liability under the Act. *See Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1313 (11th Cir. 2013). Although owners and corporate officers are more susceptible to personal liability because they are more likely to exercise operational control, the broad definition of an employer under the Act does not limit individual liability to officers and owners. *See id.* at 1310. We must consider "the circumstances of the whole activity." *Alvarez Perez*, 515 F.3d at 1160 (citation and internal quotation marks omitted).

To be an employer under the Act, a supervisor "must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee." *See Patel v. Wargo*, 803 F.2d 632, 638 (11th Cir. 1986). That involvement includes "control over 'significant aspects of the company's day-to-day functions, including compensation of employees or other matters in relation to an employee.'" *Lamonica*, 711 F.3d at 1314 (alteration accepted) (quoting *Alvarez Perez*, 515 F.3d at 1160). Involvement in the day-to-day operations of a company can include regular visits to the company's facilities, the power to determine employee salaries, involvement in the business operations of the company, or control over the company's purse strings. *See Alvarez Perez*, 515 F.3d at

1160–62 (collecting cases). A supervisor's control must be substantial and related to the company's obligations under the Act. *Lamonica*, 711 F.3d at 1314.

Sunny is an employer under the Act. He is undeniably involved in the day-to-day operations of the company: he lives at one of the properties and supervised Spears's daily job activities. He testified that he oversaw things "day-to-day," and his father would often work from Florida. And Sunny gave Spears tasks and set Spears's work schedule. Although Sunny tries to disclaim financial control over the company—insisting that his father set the salaries and that he adjusted room rental rates only at his father's instruction—Sunny had control over the company's finances in a way that other company employees did not. Sunny was the only employee other than his father who could sign paychecks, and there is no evidence that any other employee was involved in discussions about rental rates or could adjust those rates. Our precedents extend individual liability to people who "control . . . significant aspects" of the company's "day-to-day functions," *see Alvarez Perez*, 515 F.3d at 1160 (citation and internal quotation marks omitted), and the record supports a finding that Sunny had control.

The Patels argue that if Sunny is individually liable, all middle managers will face individual liability under the Act, no matter how removed from upper management. But the Act and our precedents state that individual liability is not limited to upper management and executives. The definition of "employer" is broad. *See* 29 U.S.C. § 203(d) ("'Employer' includes any person acting directly or

indirectly in the interest of an employer in relation to an employee."). And our precedents explain that anyone who has "some direct responsibility for the supervision of the employee" can be an employer—a definition that includes managers. *See Patel*, 803 F.2d at 638.

Moreover, Sunny is not in the same position as the average middle manager. He is the son of the owner of the company. He works with his father regularly and consults him on company financial matters like compensation and room rental rates. When Rick is unavailable to attend to company business, Sunny takes the reins. Sunny's status as Spears's day-to-day manager is only one reason that he is an employer under the Act—his involvement in company operations is another. And his control is both "substantial and related to" the company's obligations under the Act. *Lamonica*, 711 F.3d at 1314.

### B. *The Magistrate Judge Erred in Excluding the Stipulated Value of Spears's Lodging From the Minimum Wage Calculation.*

The Patels argue that the magistrate judge erred in excluding the stipulated value of Spears's lodging from the calculation of his unpaid minimum wages but including it for the calculation of Spears's overtime damages. In their view, if the magistrate judge accepted the stipulated value of Spears's lodging for one calculation, the magistrate judge had to accept it for the other calculation. Spears responds that the Patels mischaracterize the stipulation on the value of his lodging and that they are not entitled to credit for

his lodging costs because they failed to comply with the Department of Labor's recordkeeping regulations.

When a court calculates the back wages that an employee is due under the Act, the employer "is entitled to a credit for the reasonable cost of providing the meals and lodging." *Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 474 (11th Cir. 1982). Reasonable cost is defined as "not more than the actual cost to the employer of the board, lodging, or other facilities customarily furnished by him to his employees." 29 C.F.R. § 531.3(a). Employers must keep certain records of the cost incurred in providing board, lodging, and other facilities, *id.* § 516.27(a), and employers must keep records showing additions or deductions from wages paid for board, lodging, or other facilities on a work-week basis, *id.* § 516.27(b).

The employer bears the burden of establishing that he is entitled to the credits of lodging by proving the reasonable cost of the credited items. *See Donovan*, 676 F.2d at 473–74. An employer's "unsubstantiated estimate of his cost, where the employer has failed to comply with the recordkeeping provisions of the [Act], and where there has been no determination of reasonable cost by the Wage and Hour Division, does not satisfy the employer's burden of proving reasonable cost." *Id.* at 475.

The parties' dispute hinges on whether the stipulation to the value of Spears's lodging satisfied the Patels' burden to prove the reasonable cost of lodging and entitled them to credit for the lodging value in the calculation of Spears's unpaid minimum wages. To determine whether the Patels have satisfied their burden, we must

first sort out the parties' stipulations. The Patels argue that they were relieved of their burden to prove the reasonable cost of Spears's lodging for the purpose of a minimum wage credit because the parties stipulated that Spears's lodging was worth $630 a week. Spears contends that the stipulation applies only to the use of the $630 value for the purposes of calculating his overtime pay rate. We agree with the Patels.

In the supplemental pretrial order, the parties never contested the value of the lodging. The parties stated that Spears's lodging is valued at $630. The parties disagreed only about how the value of the lodging could be credited. Spears wanted the $630 value to be considered only to calculate his overtime pay rate. The Patels wanted the $630 value to be used to calculate both Spears's minimum wages and overtime pay or, in the alternative, to be excluded from both calculations. But neither party ever disputed that $630 was the reasonable cost of Spears's lodging or asserted that the value must be determined at trial. Although Spears is correct that he did not concede that the cost of lodging should be included in the calculation of minimum wage, he never disputed the reasonable cost of lodging, and the plain text of the stipulation belies his contrary argument.

The question then becomes whether a stipulation to the value can satisfy the Patels' burden to prove reasonable cost of lodging to receive credit for it in the calculation of Spears's minimum wage. Spears argues that because the Patels did not comply with the Department of Labor's recordkeeping requirements, they did not

satisfy their burden and the $630 value is "unsubstantiated." But Spears misreads the regulations and our decision in *Donovan*.

Although the regulations require employers to keep records of lodging costs, the regulations do not say that keeping those records is a prerequisite for getting credit for lodging costs in a lawsuit. *See* 29 C.F.R. § 516.27(a)–(b). And our decision in *Donovan* does not hold that keeping records is a requirement for credit. *Donovan* involved a dispute about the value of lodging, and we held that the employer could prove the reasonable cost of lodging by providing the records required by regulation. *See* 676 F.2d at 474–75. But we did not hold that the records were the *only* evidence that an employer could use to prove reasonable cost. Indeed, *Donovan* considered other evidence of reasonable cost, like records of room and board charged to clients and the testimony of the employer. *See id.* at 475–76. We determined that the other evidence was not sufficient to prove reasonable cost but not because it failed to satisfy the recordkeeping regulation. *Donovan* is also distinguishable from this appeal in which the parties do not contest the actual value of lodging. In *Donovan*, the parties contested the value of the lodging. *See id.*; *Caro-Galvan v. Curtis Richardson, Inc.*, 993 F.2d 1500, 1513–14 (11th Cir. 1993) (discussing *Donovan*'s burden on the defendants and quoting *Donovan*'s statement about ways to substantiate the estimate of cost).

Litigants may always stipulate to facts that would otherwise be one party's burden to prove. And stipulations are binding in civil cases. *See Feazell v. Tropicana Prods., Inc.*, 819 F.2d 1036, 1040 (11th

Cir. 1987) ("Matters stipulated to in a pretrial order are binding on the parties unless modified and normally cannot be objected to on appeal."). Factual stipulations are formal concessions that "have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." *Christian Legal Soc'y Chapter of the Univ. of Cal. v. Martinez*, 561 U.S. 661, 677–78 (2010) (citation and internal quotation marks omitted). We explained in *United States v. Hardin* that once "a stipulation is entered, even in a criminal case, the government is relieved of its burden to prove the fact." 139 F.3d 813, 816 (11th Cir. 1998) (citation and internal quotation marks omitted). And the rule applies to civil cases resolved by bench trial too. When the judge is made aware of the stipulation of a fact in a bench trial, the stipulation is conclusive evidence of the fact even if no other evidence of that fact is presented. The party with the burden of proof "is relieved of its burden to prove" the stipulated fact. *Id.* (citation and internal quotation marks omitted).

The stipulation to the value of Spears's lodging relieved the Patels of the burden to prove at trial the reasonable cost of lodging. Spears cannot contend that the $630 value is unsubstantiated because he substantiated it by stipulating to it. In a typical case in which the parties contest the reasonable cost of lodging, the Patels' failure to provide the records required by regulation could disqualify them from receiving credit for lodging costs. *See, e.g., Donovan*, 676 F.2d at 475–76. The stipulation was a tactical decision by Spears: by agreeing to the value pretrial, he benefitted from its inclusion in the calculation of unpaid overtime. But Spears's stipulation also eliminated the Patels' burden to prove this value for the

purpose of a minimum-wage credit. That Spears perhaps regrets that tactical decision has no bearing on its effect, and the magistrate judge erred in failing to give the Patels credit for the stipulated value of lodging toward the minimum wage claim.

## IV. CONCLUSION

We **AFFIRM** the magistrate judge's ruling that Sunny Patel is an employer under the Act. We **VACATE** the magistrate judge's calculation of damages and **REMAND** for further proceedings.

22-13376                Jordan, J., Concurring                1

JORDAN, Circuit Judge, Concurring.

I join Parts I, II, and III.B of the court's opinion.  As to Part III.A, which discusses the individual liability of Rick "Sunny" Patel under the FLSA, I concur in the judgment.  In my view, the resolution of that issue is close, and some of the court's discussion does not take into account some of the limiting language in our cases.

Whether an individual is an employer within the meaning of the FLSA is ultimately a question of law.  But that determination is necessarily based on underlying historical facts, which are reviewed for clear error.  *See Patel v. Wargo*, 803 F.2d 632, 634 (11th Cir. 1986).

The FLSA defines the term "employer" broadly to include "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 201(d).  If "taken in the broadest literal sense," this definition "could extend [individual] liability to virtually any person who has supervisory power over employees."  Susan Prince, Employer's Guide to Fair Labor Standards Act ¶ 938 (2022).  But we have said, agreeing with the First Circuit, that "'individuals ordinarily are shielded from personal liability when they do business in a corporate form, and that it should not lightly be inferred that Congress intended to disregard this shield in the context of the FLSA.'"  *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1313 (11th Cir. 2013) (quoting *Baystate Alt. Staffing, Inc. v. Herman*, 163 F.3d 668, 677 (1st Cir. 1998)).  Though the FLSA "contemplates at least some individual liability," Congress intended to impose liability upon those who "'control[ ] a

corporation's financial affairs and can cause the corporation to compensate (or not to compensate) employees in accordance with the FLSA.'" *Id.* (quoting *Baystate*, 163 F.3d at 678).

Thus, "[t]o support individual liability, there must be control over significant aspects of [the company's] day-to-day functions, including compensation of employees or other matters in relation to an employee." *Lamonica*, 711 F.3d at 1314 (internal quotation marks and citation omitted). And "while control need not be continuous, it must be both substantial *and* related to the company's FLSA obligations." *Id.* (emphasis added).

It seems to me that, as indicated in *Lamonica*, supervisors who are not officers or shareholders should not be deemed employers under the FLSA unless they have some control or involvement with the company's financial affairs such that they direct the compensation or non-compensation of employees. *See* Frederick T. Golder & David R. Golder, Labor and Employment Law: Compliance and Litigation: Definition of "Employer"—Individual Liability—Eleventh Circuit § 5:18 (3d ed. & May 2024 update). In other words, courts should not apply the economic reality analysis "in a manner that would 'make any supervisory employee, even those without any control over the corporation's payroll, personally liable for the unpaid or deficient wages of other employees.'" *Manning v. Boston Medical Ctr. Corp.*, 725 F.3d 34, 47 (1st Cir. 2013) (citation omitted).

The analysis should focus on "the role played by the corporate officers in causing the corporation to undercompensate

22-13376            Jordan, J., Concurring                3

employees and to prefer the payment of other obligations and/or the retention of profits.  In addition to direct evidence of such a role, other relevant indicia may exist as well—for example, an individual's operational control over significant aspects of the business and an individual's ownership interest in the business. Such indicia, while not dispositive, are important . . .  because they suggest that an individual controls a corporation's financial affairs and can cause the corporation to compensate (or not to compensate) employees in accordance with the FLSA." *Baystate*, 163 F.3d at 678. Otherwise, supervisors may find themselves individually liable under the FLSA even though they have nothing to do with the compensation of employees—the very thing the FLSA is concerned with.  *See Manning*, 725 F.3d at 47–48.  *See also Gray v. Powers*, 673 F.3d 352, 355 (5th Cir. 2012) (listing the following factors as ones to consider in determining whether a person is an employer: whether the person "(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records").

The court states that "our precedents explain that anyone who has 'some direct responsibility for the supervision of the employee' can be an employer [under the FLSA]—a definition that includes managers."  Though that is a correct quotation of *Patel*, 803 F.2d at 638, it lacks the context in which that case was ultimately decided. In *Patel*, we held that a president/director/principal stockholder was not necessarily an employer under the FLSA where he *lacked* involvement in the day-to-day operations of the company

and did *not* have direct responsibility for the supervision of employees. *See id*. at 638 (emphasis added). *Patel* does not hold that *anyone* who has direct, supervisory responsibility over employees is liable as an employer. It suggests that such direct, supervisory responsibility is necessary—not that it is sufficient.

The evidence as to Sunny is not overwhelming. But there is enough to affirm his individual liability under the FLSA. First, although Sunny was not in charge of payroll, he had authority to sign checks for both hotels and sometimes signed Mr. Spears' payroll checks (as well as payroll checks for other employees and checks for various business expenses). Second, Sunny was Mr. Spears' immediate supervisor and gave Mr. Spears his job assignments. Third, Sunny was aware of Mr. Spears' hours and, although Mr. Spears testified that he worked the same shift throughout his employment, he also testified that Sunny in fact set his hours. Fourth, Sunny had operational authority, as he had access to and was a signatory on the hotels' "general account," and worked with his father in setting room rates and responding to cancellation and refund requests.

The defendants attempted to downplay Sunny's financial and operational control of the hotels, but the magistrate judge specifically found that Sunny's testimony was "inconsistent, self-serving, and ultimately, lacking in credibility." D.E. 112 at 9. *See also id*. at 20 n.15 (finding that the testimony of Rick Patel, Sr. was "highly inconsistent and self-serving, offering little probative value"). The evidence presented at trial must be considered in light of these

22-13376                 Jordan, J., Concurring                 5

credibility findings.  *See United States v. $242,484.00*, 389 F.3d 1149, 1154 (11th Cir. 2004) (en banc) ("[W]e and other federal appellate courts have inferred from a district court's explicit factual findings and conclusion implied factual findings that are consistent with its judgment although unstated.").  I conclude that there is enough to affirm Sunny's individual liability under the FLSA, as his control was "both substantial and related to the compan[ies'] FLSA obligations." *Lamonica*, 711 F.3d at 1314.