[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 31, 2006
THOMAS K. KAHN
CLERK

No. 05-14091
Non-Argument Calendar

_____

D. C. Docket No. 04-80117-CV-DTKH

STAN FREUND,

Plaintiff-Appellant,

versus

HI-TECH SATELLITE, INC.,
JOEL EISENBERG,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(May 31, 2006)**

Before ANDERSON, BLACK and BARKETT, Circuit Judges.

PER CURIAM:

Stan Freund appeals the district court's dismissal with prejudice of his Fair

Labor Standards Act ("FLSA") suit, brought pursuant to 29 U.S.C. § 201 et seq. The district court determined, after a bench trial, that Freund was not entitled to overtime pay from Hi-Tech Satellite because he was an independent contractor, not an employee.

The requirements of the FLSA apply only to employees. The statute defines an "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). In turn, the FLSA defines "to employ" as "to suffer or permit to work," 29 U.S.C. § 203(g), and an "employer" as "any person acting . . . in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d).

The Supreme Court has explained that courts must determine whether, as a matter of "economic realit[y]," an individual is an employee or an independent contractor in business for himself. Rutherford Food Corp. v. McComb, 331 U.S. 722, 728, 67 S.Ct. 1473 (1947). Several factors guide this inquiry:

> (1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;
> (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
> (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers;
> (4) whether the service rendered requires a special skill;
> (5) the degree of permanency and duration of the working relationship;
> (6) the extent to which the service rendered is an integral part of the alleged employer's business.

2

Secretary of Labor v. Lauritzen, 835 F.2d 1529, 1535 (7th Cir. 1987). "No one of these considerations can become the final determinant, nor can the collective answers to all of the inquiries produce a resolution which submerges consideration of the dominant factor – economic dependence." Usery v. Pilgrim Equip. Co., 527 F.2d 1308, 1311 (5th Cir. 1976).[1] The determination of employment status is a question of law, which we review de novo. Antenor v. D & S Farms, 88 F.3d 925, 929 (11th Cir. 1996). Subsidiary findings are considered issues of fact. Patel v. Wargo, 803 F.2d 632, 634 n.1 (11th Cir. 1986).

1. Nature and Degree of Control exerted by Hi-Tech over Mr. Freund

The district court determined that Hi-Tech exerted very little control over Mr. Freund. Hi-Tech scheduled the installation appointments but Freund could re-schedule them. The specific details about how Freund carried out his duties were left to him with the exception that 1) he was not allowed to perform any additional services that were not paid for by the customers without Hi-Tech's approval; 2) he had to wear a Hi-Tech shirt during appointments; 3) he had to follow certain minimum specifications for the installations; and 4) he had to call Hi-Tech to

_____

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc), this Court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

3

confirm he had completed the installation and report any problems that had arisen. The district court found that Hi-Tech's interest in Freund's work was the end result of customer satisfaction, and not with the day-to-day regulation of his work habits, hours worked or work methods. The district court credited Joel Eisenberg's testimony that Freund was free to perform installations for other companies and could have established his own subcontracting corporation. The court noted that several of Hi-Tech's other installers had created their own corporate entities.

## 2. Opportunity for Profit or Loss, Depending on his Managerial Skill

Next the district court reasoned that the looseness of the relationship between Hi-Tech and Freund permitted him great ability to profit or lose that was dependant upon his managerial skill. Freund was almost entirely compensated by the job and not the hour; therefore, by accepting more jobs, performing more efficiently and hiring employees, he could earn greater sums of money. The court also credited Eisenberg's testimony that Freund could have accepted installation jobs from other companies.

## 3. Investment in Equipment and Materials Required for the Job, and Employment of Other Workers

The court concluded from the testimony and the record evidence that Freund

procured all of the equipment necessary to perform the installations. He drove his own vehicle and provided his own tools and supplies for each installation. Finally, although Freund did not hire any workers, other of Hi-Tech's installers did.

4. Skill Level

From the record evidence and testimony, the district court discerned that Freund had special skills to properly install home satellite and entertainment systems. He was also required to explain the inner workings of the satellite and/or home entertainment systems to customers and troubleshoot any installation difficulties.

5. Degree of Permanence in Freund's Working Relationship with Hi-Tech

The court concluded that Freund's relationship with Hi-Tech was not one with a significant degree of permanence. It based its conclusion on the fact that Freund was able to take jobs from other installation brokers. Also, the court noted that Freund could take as many or as few jobs as he desired.

6. The Relationship between the Services Freund rendered and Hi-Tech's Business

In the only factor weighing for Freund, the district court found that Freund's services were an integral part of Hi-Tech's business.

On appeal, Freund argues that the district court erred because it looked not at what the economic reality of the relationship was but rather at what the relationship could have been. Although Freund claims that Hi-Tech's allegations that Freund could have hired employees, taken days off, and worked for other companies were made after the fact, Hi-Tech was able to point to how its other installers had behaved in the same relationship. Freund argues that this is irrelevant but we disagree: it is a fact that tends to support Hi-Tech's testimony about how it treated its installers and belies Freund's allegations that the testimony was made up after the fact.

This case is substantially similar to an unpublished Fourth Circuit case that reached the same result. In Chao v. Mid-Atlantic Installation Services, Inc., 16 Fed. Appx. 104 (4th Cir. 2001), the court affirmed the district court's determination that cable installers working for the defendant corporation were independent contractors. The court examined very similar facts and concluded the installers had sufficient control over their jobs and profits, had special skills, and invested in their equipment enough to make them independent contractors. Like Freund, these installers did not set the prices but provided their own equipment and had a special skill set, both of which the court deemed important. Additionally, it recognized that although the installers did not set the prices, the installers were

6

"no less in control of their net profits as a result of these variables than typical independent contractors." Id. at **3.

Having read the trial transcript and reviewed the exhibits, we conclude that the district court did not err. It belies common sense to read the facts in the way that Freund argues that they should be. Just because Freund worked six days a week does not mean that he had to, especially in light of the evidence that other installers did not. Under Freund's logic, we would be compelled to determine, in another type of case, that a firm did not give sick days if the employee never took them. This does not make common sense. In the absence of evidence demonstrating that the relationship with Freund was different, evidence of how Hi-Tech treated its other installers is probative of the working relationship.

**AFFIRMED.**