[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-10429
_____

Agency No. 10-CA-138169


CREW ONE PRODUCTIONS, INC.,

Petitioner
Cross-Respondent,

versus

NATIONAL LABOR RELATIONS BOARD,

Respondent
Cross-Petitioner.

_____

Petitions for Review and Enforcement of a Decision of the
National Labor Relations Board
_____

(February 3, 2016)

Before WILSON, WILLIAM PRYOR, and GILMAN,[*] Circuit Judges.

WILLIAM PRYOR, Circuit Judge:

_____

[*] Honorable Ronald Lee Gilman, United States Circuit Judge for the Sixth Circuit, sitting by designation.

This petition for review and the cross-application for enforcement require us to decide whether the National Labor Relations Board misapplied the law of agency when it determined that local freelance stagehands were employees of a referral service. That service, Crew One Productions, refers stagehands to the producers of concerts and other live events in the Atlanta area. The Board decided that the stagehands were employees of Crew One, which gave the Board authority to regulate their relationship. The Board later directed an election and certified a union, and when Crew One refused to negotiate with the union, the Board entered summary judgment against Crew One for an unfair labor practice. The facts about the status of the stagehands are essentially undisputed, so we review only whether the Board correctly applied the law. Because we conclude that the stagehands are independent contractors, we grant the petition for review, deny the cross-application for enforcement, and vacate the decision of the Board.

## I. BACKGROUND

Crew One refers stagehands to event producers for concerts, plays, graduations, sporting events, trade shows, and religious events in the Atlanta area. Event producers ordinarily contract with Crew One for a certain number of stagehands and pay the company an hourly rate for each stagehand. Crew One then refers interested stagehands from its database.

2

To be included in the database, stagehands complete a questionnaire about their skills and availability. After submitting the questionnaire, most of the stagehands attend a brief orientation at the Crew One office, where they receive a packet of information but no training or testing. The information includes client policies and best practices, as well as the procedure for accepting or declining work offered by Crew One.

Much of the orientation is about safety. Crew One requires that stagehands purchase and wear a hard hat and work boots, and it recommends that they wear work gloves. The only item that Crew One provides is a reflective vest marked "Crew One," as requested by clients for safety (because of the reflective color) and security (because it identifies the stagehands as authorized personnel). Otherwise, stagehands may wear "comfortable clothing," as long as it is "presentable."

Crew One communicates four other client policies in its orientation packet. First, stagehands must be sober. Second, stagehands may not interact with the artists or bring family and friends to events. Third, stagehands should bring a six-inch crescent wrench, which is "a necessary tool for this type of work." Fourth, "[a]nytime a concert load-in is offered, . . . clients expect [stagehands] to also return for their load-out."

Additionally, Crew One provides some basic tips about "[d]ealing with [t]ouring [p]ersonnel." It warns stagehands that touring crews "sometimes are not

3

in the best of moods" and encourages stagehands to wait for and follow instructions, "ask questions when necessary," and remember that tour personnel "are your boss for the day." The orientation packet also provides driving directions to venues and the opportunity to purchase a discounted parking pass from certain venues.

Crew One maintains a workers' compensation insurance policy at the request of its clients. The company informs stagehands that they should report work injuries promptly. It also informs them that the clients pay for the policy.

At orientation, stagehands must sign an "Independent Contractor Agreement" before Crew One adds them to the database. The agreement informs the stagehand that he or she is "an independent contractor" who is "responsible for all . . . [t]axes," "hired on an individual project basis," and entitled to "negotiate[] for each individual project." Stagehands must also answer additional questions for the database and complete a Form W-9, which the Internal Revenue Service explains is "the first step" when a company has "made the determination that the person [it is] paying is an independent contractor," *see Forms and Associated Taxes for Independent Contractors*, IRS, https://www.irs.gov/Businesses/Small-Businesses-&-Self-Employed/Forms-and-Associated-Taxes-for-Independent-Contractors (last updated Jan. 5, 2016) (all Internet materials as visited February 2, 2016, and available in Clerk of Court's case file).

4

When Crew One contracts with a producer to refer stagehands for an event, it emails the stagehands to offer the work on a first come, first served basis. Stagehands are free to accept or decline the offer without repercussions. The email with the offer contains information from the client, forwarded by Crew One, explaining when and where to report. On the day of the event, stagehands report thirty minutes before the client's call time so that a Crew One project coordinator can confirm attendance for payment purposes and assign them to a particular department, such as rigging or carpentry. The stagehands bring their own basic supplies, and Crew One provides no supplies other than the vests. After work begins, stagehands report exclusively to tour personnel, except that stagehands must sign out with Crew One to record their time of departure.

Crew One does not require its stagehands to undergo a physical exam or testing, nor does Crew One subject them to discipline. The company does not maintain an employee handbook, pay for or provide certifications of proficiency, conduct any meetings after orientation, or reimburse the stagehands for incidental expenses. Crew One also does not withhold taxes or offer benefits to the stagehands, although it does so for administrative employees at its offices. It does not prohibit stagehands from using other referral services or doing outside work, and many stagehands do. In fact, the company has directed payments to separate business entities for at least fourteen stagehands.

Crew One pays its stagehands based on hours worked, unless the stagehand negotiates a day rate. All stagehands receive an industry-standard minimum of four hours of pay per job. Hourly rates vary for certain events, times of day, holidays, and lengths of time without a break.

In March 2014, the International Alliance of Theatrical Stage Employees petitioned the National Labor Relations Board to become the representative of stagehands contracting with Crew One. Based on briefs and the evidence collected at a hearing, the regional director decided that the stagehands are employees and that the Alliance did not have a disabling conflict of interest. The director directed an election to certify the union as the representative of the stagehands.

The Board denied review of the regional director's decision by a vote of two to one because Crew One "raise[d] no substantial issues warranting review." Member Miscimarra dissented on the ground that the stagehands are not employees:

> [T]he Regional Director determined certain factors favor independent contractor status; regarding certain other factors, the role of Crew One appears to be extremely limited given that most if not all performed work is directed and controlled by third party client(s); and . . . the Board should determine what weight, if any, shall be afforded to written agreements stating that stagehands would work as independent contractors. Even though such agreements are not necessarily dispositive, it appears that they were afforded no weight in this case . . . .

6

The majority responded that "the Regional Director did evaluate the significance of independent contractor agreements signed by the stagehands. He simply found that their potential significance was undercut by the fact that they apparently were mandated by [Crew One]." "Because direct judicial review of representation determinations is unavailable," Crew One could not petition for review in court. *See NLRB v. Ky. River Cmty. Care, Inc.*, 532 U.S. 706, 709, 121 S. Ct. 1861, 1865 (2001).

After the election, the Board certified the Alliance as the exclusive representative of the stagehands. Crew One refused to bargain, and the Board filed a complaint alleging an unfair labor practice, 29 U.S.C. §§ 160, 158. The Board entered summary judgment against Crew One with no further reasoning about the status of the stagehands. Member Miscimarra renewed his disagreement with the earlier denial of review but did not dissent from the summary judgment. Crew One petitioned for review, and the Board cross-applied for enforcement.

## II. STANDARD OF REVIEW

We may enforce the decision of the Board only on the grounds articulated in its order. *Northport Health Servs., Inc. v. NLRB*, 961 F.2d 1547, 1553 (11th Cir. 1992). "Because the Board's summary judgment order is predicated on the findings in the underlying representation case, we review the merits of those decisions together on appeal." *Lakeland Health Care Assocs., LLC v. NLRB*, 696

F.3d 1332, 1335 (11th Cir. 2012). "[T]he findings of the Board with respect to questions of fact" are conclusive "if supported by substantial evidence on the record considered as a whole." 29 U.S.C. § 160(e), (f). But "[t]he Board's determination that the [stagehands] are employees as opposed to independent contractors . . . 'depends on the application of law to facts, and the legal standard to be applied is ultimately for the courts to decide and enforce.'" *NLRB v. Associated Diamond Cabs, Inc.*, 702 F.2d 912, 919 (11th Cir. 1983) (quoting *Allied Chem. & Alkali Workers v. Pittsburgh Glass Co.*, 404 U.S. 157, 182, 92 S. Ct. 383, 399 (1971)).

## III. DISCUSSION

The National Labor Relations Act defines "employee" to "include any employee . . . [but not] any individual having the status of an independent contractor," 29 U.S.C. § 152(3), and "the Board has no authority whatsoever over independent contractors," *FedEx Home Delivery v. NLRB*, 563 F.3d 492, 496 (D.C. Cir. 2009). It is well settled that the common law of agency governs status determinations. *NLRB v. United Ins. Co. of Am.*, 390 U.S. 254, 256, 88 S. Ct. 988, 990 (1968); *Associated Diamond Cabs*, 702 F.2d at 918. The Restatement (Second) of Agency lists the following several factors as relevant to this inquiry:

> (a) the extent of control which, by the agreement, the master may exercise over the details of the work;

8

(b) whether or not the one employed is engaged in a distinct occupation or business;

(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

(d) the skill required in the particular occupation;

(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f) the length of time for which the person is employed;

(g) the method of payment, whether by the time or by the job;

(h) whether or not the work is a part of the regular business of the employer;

(i) whether or not the parties believe they are creating the relation of master and servant; and

(j) whether the principal is or is not in business.

Restatement (Second) of Agency § 220(2). Among those factors, we give special attention to control. *Associated Diamond Cabs*, 702 F.2d at 919.

We divide our discussion in three parts. We begin by discussing the five errors that the Board made when it applied the law to the facts: first, Crew One does not have the right to exercise control over the stagehands; second, the failure to withhold taxes weighs strongly in favor of a determination that the stagehands are independent contractors; third, the independent contractor agreements are evidence of the parties' intent; fourth, negotiations over pay are irrelevant; and fifth, the stagehands do not perform work that is part of the business of Crew One.

9

We next discuss the factors that the Board applied correctly. Finally, we weigh all of the factors and conclude that the stagehands are independent contractors. Because we must vacate the decision on this ground, we do not reach Crew One's argument that the Alliance had a conflict of interest.

### A.  Crew One Has No Control Over the Stagehands.

Control is the most important factor in the common law. *Id.* The test for control "takes into account the degree of supervision, the entrepreneurial interests of the agent and any other relevant factors." *Id.* at 919–20. It also distinguishes between "control over the manner and means of the agent's performance and the details of the work," which is relevant, and "mere economic control or control over the end result of the performance," which is not. *Id.* at 920. Under this test, Crew One did not have the right to control the stagehands.

The regional director made several factual findings about the stagehands' control over their work, but they fail to establish that Crew One had the right to control the manner, means, and details of the work. The requirement that stagehands check in and check out evinces control over the ends of the job, not the means of it. Crew One uses the requirement to ensure that the stagehands are present and to calculate their pay. Beyond this control over the ends, any control of the stagehands' work is exercised by the clients. Only the event producers and touring crews control the means of the work performed by the stagehands, and

10

Crew One lacks the expertise to direct the stagehands in their work for any particular client.

The stagehands also have entrepreneurial interests. The regional director found that the stagehands "are free to accept or reject offered work without retaliation and are free to accept work from other labor providers." The Board argues that this fact is "a consequence of the part-time nature of stagehand work," but nothing in the nature of part-time work dictates that Crew One must allow the stagehands to decline jobs or use competing referral services. That some part-time workers are employees and that there are other ways for stagehands to have entrepreneurial interests does not diminish the significance of the regional director's factual finding. We conclude that Crew One lacked control over the stagehands.

## B. The Failure to Withhold Taxes Is Strong Evidence that the Stagehands Are Independent Contractors.

The Board also erred in its application of the law by not giving strong weight to the factual finding that Crew One does not withhold taxes. In *Associated Diamond Cabs*, we explained that "the fact that the Company deducts no Social Security or income taxes from the [worker's] receipts . . . is a strong indication of the absence of employee status." 702 F.2d at 924 n.3. We acknowledge that our sister circuits would give this fact less weight. *See, e.g.*, *Seattle Opera v. NLRB*, 292 F.3d 757, 764 n.8 (D.C. Cir. 2002) ("[T]he tax treatment of the [workers']

11

payments is of little analytical significance . . . ."); *Eisenberg v. Advance Relocation & Storage, Inc.*, 237 F.3d 111, 116 (2d Cir. 2000) ("Were . . . tax treatment factors accorded extra weight, . . . a firm and its workers could all but agree for themselves, simply by adjusting the structure of workers' compensation packages, whether the workers will be regarded as independent contractors or employees."); *J. Huizinga Cartage Co. v. NLRB*, 941 F.2d 616, 620 (7th Cir. 1991) ("[I]f an employer could confer independent contractor status through the absence of payroll deductions there would be few employees falling under the protection of the Act."). The regional director in the present case found that "[t]axes are not withheld from [stagehands'] paychecks," but he concluded that this fact was "not . . . determinative." Based on our circuit's precedent, both he and the Board should have given it strong weight.

### C. The Independent Contractor Agreements Are Evidence of Intent to Form an Independent Contractor Relationship.

The regional director discounted the significance of the independent contractor agreement signed by each stagehand "because it is required in order to work for [Crew One]." The Board agreed that the "potential significance was undercut by the fact that they apparently were mandated by the Employer," but Member Miscimarra dissented because he "believe[d] the Board should determine what weight" should be given to the agreements. We agree with Crew One that the Board erred.

12

One of the Restatement factors is the intent of the parties, *see* Restatement (Second) of Agency § 220(2)(i), and an agreement that designates the worker as an independent contractor is evidence of intent to create such a relationship. We observed the significance of independent contractor agreements as evidence of intent in *Associated Diamond Cabs*, 702 F.2d at 924, and two of our sister circuits have likewise treated them as "an important indication," *Brown v. NLRB*, 462 F.2d 699, 703 (9th Cir. 1972), and "indicative," *C.C. Eastern, Inc. v. NLRB*, 60 F.3d 855, 858 (D.C. Cir. 1995), of status as an independent contractor.

If the Board had found fraud, duress, or some other defense to formation, it would have been correct to disregard the agreements. But the Board made no such finding. It gave the agreements less weight only because Crew One insisted that all of the stagehands sign one. This theory is not a valid defense to the formation of the agreements. Contrary to the argument of the Board, the significance of the agreements is not "undercut" by the fact that all of the stagehands signed one

The Board cites three decisions to argue that the totality of the circumstances outweighs the significance of the agreements, but all three decisions are distinguishable. In each case, the employer exercised control over the manner and means of performance, which is the most important factor. *See City Cab Co. of Orlando v. NLRB*, 628 F.2d 261, 265 (D.C. Cir. 1980) (upholding "the Board's conclusion that the company maintained sufficient control over the conduct of its

13

drivers"); *Time Auto Transp., Inc.*, 338 NLRB 626, 626 n.1 (2002) (concluding that the employer "used th[e] right [to terminate the contract] to control the manner of [the employee's] performance of his work"); *Corporate Express Delivery Sys.*, 332 NLRB 1522, 1527 (2000) (concluding that the employer exercised "substantial control" over the employees). In contrast, the Board made no findings in this case about "control over the manner and means of the agent's performance and the details of the work." *Associated Diamond Cabs*, 702 F.2d at 920.

### D. The Board Erroneously Considered Negotiations Over Pay.

The Board also gave weight to the factual finding that the stagehands could not negotiate their pay. Although we have serious doubts that this finding is supported by substantial evidence in the record, *see* Hearing Tr. at 62–63, 132, 205, 224–27, 382–83, the Board committed a more fundamental error by treating bargaining power as evidence that the stagehands are employees. "That the Company sets the standardized [contract] terms and in some instances unilaterally changes them, even if true, is indicative only of relative bargaining power, not an employee-employer relationship." *Associated Diamond Cabs*, 702 F.2d at 921. "[T]he question is not whether the . . . company has economic power; rather it is whether the company has used its power to establish contract terms controlling the manner and means in which the [workers] go about their . . . business." *Local 777,*

14

*Democratic Union Org. Comm. v. NLRB*, 603 F.2d 862, 870 n.22 (D.C. Cir. 1978); *accord NLRB v. A. Duie Pyle, Inc.*, 606 F.2d 379, 386 (3d Cir. 1979).

The Board cites three of its own decisions, but none persuade us that negotiations over pay are relevant. *See Time Auto Transp.*, 338 NLRB 626; *Slay Transp. Co.*, 331 NLRB 1292 (2000); *Roadway Package Sys., Inc.*, 326 NLRB 842 (1998). The orders in all three cases rely solely on the say-so of the Board, which does not convince—let alone bind—us as a court applying the common law of agency. Only one of the decisions was reviewed by a court, and the court never mentioned negotiations. *See Time Auto Transp., Inc. v. NLRB*, 377 F.3d 496 (6th Cir. 2004). Under the common law of agency, the Board should not have weighed the factual finding on negotiations about pay.

### E.  The Board Confused Work That Is Essential to Crew One's Business with Work That Is Part of Crew One's Business.

The Board misapplied the law when it considered whether the stagehands "perform essential functions of [Crew One's] operations." The relevant inquiry is "whether or not the work is a part of the regular business of the employer," Restatement (Second) of Agency § 220(2)(h), not whether the work is essential to the business of Crew One. That the stagehands perform essential work "proves nothing in regard to the inquiry before us as it is also true in many relationships which are undisputedly that of a company to independent contractors." *Associated Diamond Cabs*, 702 F.2d at 924. Crew One is in the business of referring

15

stagehands to event producers, but Crew One does not perform stagehand work itself. Only the stagehands do. The undisputed facts about the work of the stagehands and the business of Crew One support a determination that the stagehands are independent contractors.

*F. The Board Correctly Applied the Law to Its Other Findings of Fact.*

The Board made three findings of fact that it correctly concluded weigh in favor of a determination that the stagehands are independent contractors. First, the stagehands "provide their own basic supplies on the jobs." Under the Restatement, this arrangement is characteristic of an independent contractor relationship. Restatement (Second) of Agency § 220(2)(e). Second, the stagehands "receive no benefits." The lack of employee benefits is evidence of the intent of the parties to form an independent contractor relationship. *See FedEx Home Delivery*, 563 F.3d at 498 n.4. Third, workers' compensation insurance "is provided at the behest of clients and the associated costs are charged to the client," not Crew One. This fact is also evidence that the parties intend to form an independent contractor relationship.

The Board made one other finding of fact that supports a determination of employee status. The stagehands were paid by the hour, and the Board is correct that this arrangement is a recognized consideration in the law of agency. *See id.* § 220(2)(g).

16

*G. The Stagehands Are Independent Contractors.*

When we consider all of the factors, we must conclude that the stagehands are independent contractors. The most important factor, control, supports only this conclusion. The failure to withhold taxes, the independent contractor agreements, the nature of Crew One's business, the absence of benefits, the tools, and the insurance provided by the clients also support only this conclusion. The only factor that weighs in favor of the opposite result is the hourly payments, but this factor is outweighed by the totality of the other factors, especially the lack of control. Based on the factual findings of the Board, the stagehands are independent contractors and the decision of the Board was contrary to law.

## IV. CONCLUSION

We **GRANT** the petition for review, **DENY** the cross-application for enforcement, and **VACATE** the decision of the Board.

17